UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID R. BUMA, SR.,           :     Civil No. 1:16-CV-01568
                              :
            Plaintiff,        :     (Judge Kane)
                              :     (Magistrate Judge Saporito)
    v.                        :
                              :
CAROLYN W. COLVIN,            :
Commissioner of               :
Social Security, et al.       :
                              :
            Defendant.        :

## REPORT AND RECOMMENDATION

## I.   *INTRODUCTION*

The plaintiff David R. Buma, Sr. ("Buma"), an adult individual seeks
judicial review of the final decision of the Commissioner of Social Security
("Commissioner") denying his claim for Social Security Disability Income
Benefits under Title II of the Social Security Act. Jurisdiction is conferred
on this Court pursuant to 42 U.S.C. §405(g).

This matter has been referred to the undersigned United States
Magistrate Judge to prepare a report and recommended disposition
pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the
Federal Rules of Civil Procedure.

For the reasons expressed herein, we find that the final decision of the Commissioner of Social Security is supported by substantial evidence. Accordingly, it is recommended that the final decision of the Commissioner denying Buma's claim be AFFIRMED, and Buma's request for relief be DENIED.

## II. *BACKGROUND and PROCEDURAL HISTORY*

Buma is fifty-one years old and has a high school education. (Tr. 121, 271). He was forty-four years old on the date of his alleged onset, and forty-eight years old on the date of his administrative hearing. Buma testified that he became disabled on May 29, 2010, after a motorcycle accident. (Tr. 123, 189). Buma testified that he attempted to return to work, but he quit on the second day due to pain; he stated it took a couple of days to recover from only one day of work. (Tr. 134-135).

On September 20, 2012, Buma protectively filed an application for benefits under Title II of the Social Security Act. In his application, he alleges that he became disabled on May 29, 2010, due to brain trauma, sleep disorder, fibromyalsia, hearing loss, back injury, tinutitus, and slipped discs in spine. (Tr. 190). Buma's claim was initially denied on

December 14, 2012. (Tr. 199). On February 13, 2013, Buma filed a timely request for an administrative hearing. (Tr. 230). On July 24, 2014, Buma appeared and testified during an administrative hearing before ALJ Richard Zak ("ALJ") in Wilkes-Barre, Pennsylvania. Impartial vocational expert James J. Paddock ("VE") also appeared and testified in Wilkes-Barre, Pennsylvania. Buma's claim was denied on August 12, 2014. On October 13, 2014, Buma filed a timely request for Review with the Appeals Council. (Tr. 92-97). The Appeals Council denied the claim on June 1, 2016. Buma then filed a timely complaint in this court on July 28, 2016. (Doc. 1). The Commissioner's timely answer to the complaint was filed on October 3, 2016. (Doc. 8).

Buma resides with his wife and son in the Middle District of Pennsylvania. He was employed as an automotive technician from June 1997 through May 2010. Buma was injured in a motorcycle accident on May 29, 2010. He was admitted to Geisinger Medical Center via life flight. (Tr. 460).

Buma underwent surgery in September 2010; the procedure was a C1-2 posterior cervical fusion. (Tr. 394). He underwent surgery again in April 2015 in an effort to alleviate his lower back and leg pain. (Tr. 67).

Buma testified that he is able to walk around his yard at a slow pace and that he walks approximately one-half hour per day. He has limits when it comes to lifting, standing, and walking. (Tr. 128).

Besides laying down and using a TENS unit, he stated that he has pain pills but he tries not to take them because he feels they affect his judgment. (Tr. 129). Sometimes he takes hot baths to relieve the pain. (Tr. 130). Buma stated that he has a limited range of motion when moving his head side to side. He has to move his whole body to look from side to side. (Tr. 130). He stated he has constant ringing in his ears, which limits what he actually hears. (Tr. 131).

The pain in his right wrist makes him unable to pick up anything heavy and his left hand hurts him which makes it difficult for him to grab things because of his thumb pain. (Tr. 131). Buma stated he is unable to squeeze anything. (Tr. 132).

Buma also stated that he is unable to bend because it causes pain

and can only stoop if he goes straight down to his knees and gets right back up with something to hold onto. (Tr. 132-33). Buma stated that once or twice per month he has days when the pain is so bad that he is unable to do anything. (Tr. 133).

The record shows that Buma is able to grocery shop with his wife, do laundry, wash dishes, and vacuum carpets. (Tr. 290).

III. **STANDARD OF REVIEW**

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if

5

the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the

correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity[2] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

---

[1] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[2] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[3] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[4] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then

---

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2).

shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r*, 181 F.3d 429, 433 (3d Cir. 1999).

## IV. *DISCUSSION*

In his brief, Buma raises four arguments in support of his position that the final decision denying his request for benefits should be vacated pursuant to sentence four of 42 U.S.C. § 405(g) because it is not supported by substantial evidence. First, Buma argues that the ALJ did not properly evaluate his lower back condition to determine whether it meets and/or equals the criteria of Listing 1.04. Second, Buma argues that the ALJ failed to grant Buma benefits as his inability to stoop renders him disabled pursuant to Social Security Ruling 96-6p. Third, Buma argues that the ALJ failed in concluding that he could perform the jobs identified by the VE given the restriction he can only perform sedentary jobs which provide for simple instructions and simple work-related decisions. Last, Buma argues that the ALJ failed to properly evaluate his complaint of pain.

### A. *THE ALJ'S DECISION DENYING BUMA'S CLAIM*

In his August 2014 decision denying Buma's claim, the ALJ found that Buma met the insured status requirement of Title II of the Social Security Act through December 31, 2015. (Tr. 103). The ALJ then

evaluated Buma's claim at each step of the sequential evaluation process before concluding that Buma was not under a disability, as defined by the Social Security Act.

At step one, the ALJ found that Buma did not engage in substantial gainful activity since May 29, 2010, the alleged onset date. (Tr. 103). At step two, the ALJ found that Buma had the following medically determinable severe impairments during the relevant period: history of cervical fracture status-post fusion, low back injury with nerve impingement, depressive disorder, panic disorder, and cognitive disorder. At step three, the ALJ found that Buma did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

Between steps three and four of the sequential evaluation process the ALJ assessed Buma's residual functional capacity. He found that Buma could perform sedentary work as defined in 20 C.F.R. § 404.1567(a) as follows:

> he can lift/carry 2-3 pounds frequently, and no more than 10 pounds occasionally. He can sit for 6 hours and stand/walk no

more than 2 hours in an 8 hour workday. He can work at table, desk, or bench level, perform handling, fingering, and feeling. He can also perform reaching in front and laterally but he cannot push/pull overhead arm controls or frequently work overhead. He cannot climb ladders/scaffolds or be around unprotected heights, machinery, or vibrations. He must also avoid exposure to extremes of temperature. Mentally, he can understand, remember, and carry out only simple instructions and make simple work related decisions. He is further limited to only occasional contact with co-workers, supervisors, and the public and cannot have frequent interactions with the public or work in a team type setting. He can respond appropriately to usual work situations and changes in simple, routine, and repetitive jobs.

(Doc. 9-3; Tr. 106).

The ALJ's conclusions at steps four and five were based on the above RFC, and informed by the testimony of the VE. VE Paddock testified that Buma could not engage in his past relevant work as an auto mechanic (DOT #620.281-062). (Tr. 138, 141). VE Paddock testified that the auto mechanic was medium skilled and the hypothetical limited him to sedentary, unskilled work. (Tr. 141). However, VE Paddock testified that, given the above RFC and considering Buma's limitations, he could adjust to "other work" such as: packing and packaging occupations, DOT # 779.684-034[5] or 713.684-018, with approximately 1,900 positions, bench

_____

[5] The VE appears to have misspoken, citing "DOT #779.684-304," which does not exist. DOT #779.684-034, however, matches his description

assembly positions, DOT 713.687-018 with approximately 3,400 positions available, inspecting DOT # 726.684-027 with approximately 800 positions available. VE Paddock provided additional testimony that if the hypothetical were to include alternate sitting and standing, ringing in his ears and hearing loss, difficultly with his right wrist and thumb, and limitations with range of motion in his cervical spine and this testimony was found to be credible with sufficient medical evidence to corroborate, there would be no jobs he would be able to adjust to, specifically because all the jobs were identified as hand work; and if Buma were to have wrist impediments and was unable to work with his hand and if the pain was found credible and he would be missing one to two days per month of work, he would be fired quickly. (Tr. 141-43). However, the ALJ concluded at step five that Buma could adjust to other work that exists in significant numbers in the national economy despite his impairments. (Tr. 111).

1. ***REMAND IS NOT WARRANTED FOR THE ALJ'S FAILURE TO CITE LISTING 1.04 IN HIS DECISION***

Buma argues that the ALJ erred at step three of the sequential evaluation process because he failed to discuss listing 1.04 in the written

of a job "packing fluid vials."

decision denying Buma's claims. We find that the ALJ's decision read as a whole illustrates that the ALJ considered the factors relevant to this listing.

Buma points out that the ALJ found that Buma has a severe impairment which includes a low back injury with nerve root impingement. (Tr. 104). Buma's quarrel is with the ALJ's finding that the record lacks MRI studies or EMG studies to document nerve root compression or stenosis at this listing level. (Tr. 104-05). To meet listing 1.04, a claimant must show that his medical impairments are so severe that he would be found disabled regardless of his vocational background. 20 C.F.R. §404.1525(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The medical criteria defining listed impairments are set at a higher level than the statutory standard for disability. *Zebley,* 493 U.S. at 528-32. A claimant must show that all of the criteria for a listing has been met; an impairment that meets only some of the criteria, "no matter how severe, does not qualify." It is always the claimant's burden to prove presumptive disability at step three. 20 C.F.R. §404.1526; *Zebley* 493 U.S. at 431.

To meet or medically equal listing 1.04, Buma was required to show the following medical findings:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.[6]

---

[6] "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having

15

20 C.F.R. pt. 404, subpart P, app. 1, § 1.04.

In his decision, the ALJ concluded that Buma has degenerative disc disease of the cervical and lumbar spine, but the evidence does not satisfy the criteria of section 1.04. Buma argues that the record does document nerve root compressions/impingements but when carefully read, the record did not establish definitive findings of nerve root compromise; the record merely suggests, "suspected impingement of the left L5 nerve root." (Tr. 877). Progress notes of Geisinger Medical Center diagnostic imaging dated April 13, 2012 note "multilevel degenerative disk disease and facet arthropathy, with most significant findings at L5-S1 where there is severe left neuro forminal stenosis, likely impinging the exiting L5 nerve root." (Tr. 1027, 1357). The ALJ noted there were no studies after October, 2011 to support Buma's claim, although we found one MRI study dated April 2012 which indicates "multilevel degenerative disk disease and facet arthropathy with the most significant findings at L5-S1 where there is severe left neuroforaminal stenosis, likely impinging the

---

insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of hand-held assistive device(s) that limits the functioning of both upper extremities.

existing L5 nerve root. (Tr. 1027, 1357). This does not demonstrate nerve impingement or stenosis at the listing level. Also, Buma shows no evidence of ineffective ambulation. The ALJ noted that Buma "can tend to his personal care, perform light chores, drive, and shop in stores. (Tr. 105). Accordingly, we find that the ALJ has made the required specific findings and accurately considered the record, and the record shows that Buma does not meet the criteria for disability under Listing 1.04. We find that Buma's argument lacks merit.

2. *WHETHER THE ALJ FAILED TO CONSIDER BUMA'S INABILITY TO STOOP*

Buma alleges that the ALJ erred in failing to grant benefits as his inability to stoop renders him disabled. In this case, statements from Buma about pain or other symptoms will not alone establish disability; subjective complaints must be consistent with the medical evidence, and laboratory findings. 20 C.F.R. § 404.1529(a). Buma failed to identify any reliable medical source that can substantiate his alleged inability to stoop. The ALJ found no complaints of record where Buma reported to any medical providers that he had pain when bending or stooping. None of the medical sources provided a statement of Buma's inability to

17

bend/stoop. Again, the ALJ noted that as to this argument, Buma "can tend to his personal care, perform light chores, drive, and shop in stores." (Tr. 105). Also, Buma was seen in the emergency room at Geisinger Medical Center on May 22, 2012, with pain in his right wrist and arm. Geisinger Medical Center reports dated May 22, 2012, show that Buma fell several feet off a ladder, on the prior evening and was there due to right wrist and arm pain. (Tr. 1112) This in itself contradicts the testimony that he has trouble stooping or bending.

During the disability evaluation with Karl A. Hoffman, Ph.D., Buma spoke of an outing he attended with his son, where he climbed a tower-like structure at a park. (Tr. 1418). Despite his fear of heights, that event did not cause him vertigo and it also contradicts his statement that he is unable to bend or stoop. At the administrative hearing, when asked by the ALJ if he is able to stoop, Buma responded "well, I could do it if I just go straight down and get to my knees and reach over, grab what I need and get back up." (Tr. 132-33). This, in itself, contradicts the argument that Buma is unable to stoop.

Even if the ALJ had erred in finding that Buma could not stoop or bend, the ALJ noted that at least three of the representative assembly jobs do not involve stooping. (Tr. 141). *See* DOT 713.687-018, final assembler, DOT # 706.684-030, atomizer assembler, DOT #739.684-094, lamp-shade assembler (all of which state "Stooping: Not Present - Activity or condition does not exist"). This is a clear indication that there exists in the national economy other substantial gainful work which Buma can perform which does not require stooping. Here, we find that the record fails to support the finding that Buma should be found disabled because he is unable stoop. On this argument, we find that the ALJ's decision should be affirmed.

C. *WHETHER THE ALJ ERRED IN CONCLUDING THAT BUMA COULD PERFORM JOBS IDENTIFIED BY THE VE CONSISTING OF SEDENTARY JOBS WHICH PROVIDE FOR SIMPLE INSTRUCTIONS AND SIMPLE WORK*

Here, Buma argues that he should be found disabled because he cannot perform some of the unskilled jobs identified by the VE which have a reasoning development of 2 according to the DOT, Appendix C, and as such there was only one job identified by the ALJ that falls within the sedentary exertional level, an atomizer assembler, 706.684.303.

Here, the VE identified an assembly job which has a reasoning level of 1, (Tr. 141) DOT 713.687-018, Final Assembler. According to the DOT, a level 1 reasoning level requires the individual to "[a]pply common sense understanding to carry out simple one-or-two step instructions, deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Buma does not argue that he is unable to perform a reasoning level 1 job.

In the Third Circuit Court of Appeals in *Money v. Barnhart,* 91 F. App'x 210, 215 (3d Cir. 2004), the court found that "[w]orking at reasoning level 2 [does] not contradict the mandate that [a claimant's] work be simple, routine, and repetitive." *Id.* at 215. While *Money* is non-precedential, it provides guidance, and other courts have similarly found that there is no conflict between reasoning level 2 and RFC limitation to simple, repetitive, or routine tasks.

The VE's testimony provided substantial evidence that the ALJ could rely upon in order to find that Buma remained capable of performing sedentary, unskilled jobs existing in significant numbers in the national economy. *See Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999) (stating that a VE's testimony in response to a hypothetical question that fairly sets forth every credible limitation established by the evidence

was substantial evidence of non-disability and satisfied the Commissioner's burden at step five). We find here that there is no conflict between reasoning level 2 and unskilled work. Therefore, we find the ALJ's decision, that Buma could perform level 2 positions, be affirmed.

### D. WHETHER THE ALJ PROPERLY EVALUATED BUMA'S TESTIMONY ABOUT THE COMPLAINTS OF PAIN

Last, Buma argues that the ALJ failed to properly evaluate his complaints of pain. Buma testified at length about the limiting effects the pain causes him.

In assessing a claimant's statement of his or her symptoms, the ALJ must follow a two-step process to guide this assessment. First, the ALJ must determine whether the clamant's medically determinable impairment or impairments could reasonably be expected to produce the individual's alleged symptoms. 20 C.F.R. § 404.1529. Factors relevant to the analysis include: the claimant's daily activity, location, frequency, and intensity of the clamant's symptoms; precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of the medication that he claimant takes or has taken to alleviate his or her symptoms; and any measures used to relieve the symptoms. 20 C.F.R. § 404.1529(c)(3).

During the second step, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. A claimant's statement must be considered in relation to the record as a whole. The adjudicator "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between the clamant's statements and the rest of the evidence. . . ." 20 C.F.R. § 404.1529(c)(4).

During the hearing, Buma testified about his pain stating, "it's a constant pain, it's always there." (Tr. 124). He has a limited range of motion in his neck and significant daily pain that radiates down his legs. Buma testified his impairments affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. He has undergone numerous tests, therapies, and injections to relieve the pain. He underwent surgery in 2015 to alleviate his lower back pain. (Tr. 67). He testified that if he exceeds his limitations, he is "shot for the rest of the day." (Tr. 128-29). He stated that at least on one or two occasions per month he has great pain.

In his written statement, the ALJ found that Buma's medically determined impairments could reasonably be expected to cause the alleged

symptoms; however, Buma's testimony regarding the intensity, persistence and limiting effects of his pain were not entirely credible. Again, the record reflects that Buma can do light household duties, including laundry, dishes, and vacuuming. He also drives, shops, and participates in his son's activities. (Tr. 290-92, 1418). In the disability determination dated December 14, 2012, Jonathan Rightmyer, Ph.D., indicated mild limitations with activities of daily living. (Tr. 194). In his psychiatric review, Dr. Dennis C. Gold noted also that Buma has mild restrictions with activities of daily living. (Tr. 2348).

Buma's physical exam (prior to his onset date) on November 19, 2010 with David Yang Go, M.D., showed he was in no distress and he ambulated normally. (Tr. 1902). He had significant limitations in cervical range of motion, his strength in upper extremities were 5/5 and reflexes were normal. His lumbar exam showed he could bend without pain, his hip and knee range of motion were normal and strength in lower extremities was 5/5. (Tr. 1903).

Since October 2011, Buma continued to have complaints of neck and low back pain. He has been treated at the VA Hospital, and the record notes that his back pain predated the onset date. He was also treated at

23

Geisinger Pain Clinic by Kalyan S. Krishnan, M.D., where he received medication management, and various types of injection therapies for his lumbar spine and neuropathic pain. His exams show some lumbar tenderness, tight paraspinal muscles and pain on extension, he had normal strength, gait was in tact , and negative sciatic tensions/straight leg raise testing. Also noted in the record was improvement after the injections. (Tr. 2899-2900, 2923-24, 2945, 3031).

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *Frazier v. Apfel*, Case No. 99-CV-715, 2000 WL 288246 at *9 (E.D. Pa. Mar. 7, 2000)(*quoting Walters*, 127 F.3d at 531). Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of his or her impairments is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2. In making a finding about the credibility of a claimant's statements, the ALJ need not totally accept or totally reject the claimant's statements. *Id.* at *4. The ALJ is empowered to find all, some, or none of

the claimant's allegations to be credible but "cannot reject evidence for no reason or for the wrong reason." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)(*quoting Mason*, 994 F.2d at 1066).

Under 20 C.F.R. §404.1529(c)(3), the kind of evidence an ALJ must consider, in addition to the objective medical evidence when making a credibility assessment include: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or symptoms; precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of any medication that the claimant has taken to alleviate his or her symptoms; treatment, other than medication, received by the claimant for his or her symptoms; any measures used by the claimant to relieve his or her symptoms; and any other relevant factors.

After reviewing the ALJ's evaluation of Buma's testimony in light of his arguments and with the appropriate degree of deference, we find that there is no basis to disturb the ALJ's ruling.

## V.   RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that:

(1)    Judgment should be entered in favor of the Commissioner of Social Security and against Mr. Buma as set forth in the following paragraph;

(2)     The decision of the Commissioner of Social Security denying Mr. Buma's application for Disability Insurance Benefits should be AFFIRMED and Mr. Buma's request for relief should be DENIED; and,

(3)     The clerk of court should close this case.

JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: May 22, 2017

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID R. BUMA, SR.,                 :        Civil No. 1:16-CV-01568
                                    :
                Plaintiff,          :        (Judge Kane)
                                    :        (Magistrate Judge Saporito)
        v.                          :
                                    :
CAROLYN W. COLVIN,                  :
Commissioner of                     :
Social Security, et al.             :
                                    :
                Defendant.          :

## NOTICE

Notice is hereby given that the undersigned has entered the foregoing

Report and Recommendation dated May 22, 2017. Any party may obtain

a review of this Report and Recommendation pursuant to Local Rule 72.3,

which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the

report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and

Recommendation may constitute a waiver of any appellate rights.

JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: May 22, 2017